In 2017, five years after Carman Deck filed his federal habeas petition in the Eastern District of Missouri, District Court reversed his death penalty, finding that the 10 years between his trial and his sentencing was unconstitutional. This court should reverse the district court for three reasons. The first is that Deck's claims are procedurally defaulted. This is a threshold issue. Second, at the time that Deck's conviction became final in 2010, there was no existing precedent dictating a speedy sentencing, so the district's court decision would be a new rule of criminal procedure inapplicable to Deck under T. This is also a threshold issue. Third, even if there were such a right to a speedy sentencing under the 5th, 14th, or 8th Amendment, Deck would not meet the criteria to receive relief under those provisions. The first threshold issue we must address is procedural default. Deck's claim of speedy sentencing is a claim of trial court error, and it was defaulted at the trial court level, and there is no way for him to excuse that default. Deck's claim of ineffective assistance of trial counsel is also defaulted. That was defaulted at the state post-conviction relief level, and he attempts to use Martinez to excuse that default, but the problem is that the underlying claim of trial court, or trial counsel, is not substantial. When we talk about the merits, that will become clear. The next threshold issue we must address is fatigue bar. Before you move on, on Martinez v. Ryan, is there an argument here about the alleged ineffective assistance of post-conviction counsel? So that's how you get at trial counsel under Martinez. Is the government making an argument about that? Yes, Your Honor, and that's what I had just said about the underlying claim not being substantial. That's the requirement for what Your Honor just brought up about ineffective assistance of post-conviction counsel not raising ineffective assistance of trial counsel. That underlying claim of ineffective assistance of trial counsel has to be substantial to be able to get through that cause and prejudice that Martinez allows. Okay. Was there any argument made at seeking post-conviction relief based on ineffective assistance of counsel? There were. There were some claims about failing to investigate and call several witnesses, and that's actually how we have a lot of that trial counsel testimony at that PCR transcript about that. It wasn't raised in the context of delay, though. It was just kind of what we see all the time in PCR, where there are maybe some witnesses they felt should have been called that weren't, but it was not because of the delay or somehow that these witnesses were not called. Well, there was no delay at that point, was there? If we're talking about the PCR after 2008, unless Your Honor is talking about earlier. The first application for post-conviction relief, when was that? That was, let me check the date. That was between 1998 and 2002, and so I can't recall. There would have been no delay at that point. That's correct, and I'm almost confident. I can't recall which claims were raised in that first PCR off the top of my head, but I'm almost confident that they would have raised some sort of failure to investigate or call witnesses, because that is a standard claim, particularly in a death penalty case. But the alleged ineffectiveness here occurred after the alleged delay, right? That's right. And the lawyer raised these, I mean the post-conviction lawyer raised these ineffective assistance claims about calling other witnesses and so forth, but didn't raise this particular due process claim. That's right, and after the 2008 resentencing, that PCR, they did raise failure to call, but it was not failure to call related. And what did the state court say about failing to call the particular witnesses that Judge Perry focused on in this order? Sure, so the Missouri Supreme Court has said that those witnesses were either cumulative, they were unhelpful to deck in that they would not have provided compelling testimony, or that the trial counsel had actually chosen to produce that evidence through expert witnesses, given Carmen Duck's family's either unwillingness or inability to get to trial at that point, to testify live. It was trial counsel... What did the experts say that would have fairly presented what these proffered mitigating witnesses would have said? Sure, Your Honor. One of them was a psychiatrist and one of them was a child development expert. So experts in Missouri can rely on hearsay testimony, so they actually reviewed some of the deposition testimony and other materials provided by Duck's witnesses that were at issue in that case, and then reiterated that information in a way that told a compelling story about Duck's troubled childhood, his lack of appropriate development as a child, his psychiatric issues through childhood into adulthood. So they actually took the information itself and filtered it into a way that at least gave the gravitas of having an expert witness talk about it at trial, and was able to, in fact, in his third resentencing, he actually did a timeline. It was 17 exhibits about the development of Duck's life. So that's how they were able to do it. And Your Honor, if there are no more questions about procedural default, the Teague Bar is the second threshold question we have to get to. The rules announced by the district court in this case are new rules of criminal procedure. Duck is therefore not entitled to their application. In Teague v. Lane, the U.S. Supreme Court talked about new rules of criminal procedure, and we know whether they are a new rule or not if they're dictated by precedent existing at the time the defendant's conviction became final. Did the district court rely on any precedent for the declaration in this case? Not precedent, Your Honor. In the case of due process, they relied pretty much solely on Betterman v. Montana, a 2016 case. Duck's conviction became final in this case in 2010, though it was postdated. Additionally, the Betterman proposition that the district court relied on was given in dicta, so that was not actually a due process claim that came up in that case that was a Sixth Amendment issue. So that was some indication by the U.S. Supreme Court that perhaps sometimes in the future, they might be willing to look at due process, but they explicitly said multiple times in Betterman, we're not doing it here, it's still an open question. And even in Thomas' dissent, or concurrence, I'm sorry, writes about how it is still an open question. As far as the Eighth Amendment, the case law cited there was all an opposite in that it did not regard a post-trial pre-sentencing delay. So was there any precedent that was cited? No, no U.S. Supreme Court precedent existing at the time in 2010. And I've not been able to find any precedent from this court either. Suppose that this at all happened after Betterman was decided, how would Teague apply? And in particular, would the government's answer change as to whether it was ineffective assistance of either trial counsel or post-conviction counsel to fail to raise a Betterman claim, given that the Supreme Court highlighted the issue in Betterman? I think it would still be an open question, Your Honor. In 2000, if this had been after 2016, sure. Betterman does not actually have that as a holding. A due process is a foundational, could be a foundational claim for delay in sentencing. Because all it says is, we're not foreclosing that possibility. But it does not allow that possibility, particularly because it was indicative. Because it was a Sixth Amendment claim that was raised. So it would still be an open question. I'm not sure that a Betterman claim could exist because there's no foundation laid out there. And so the government's position would be the same about ineffective assistance of counsel, that it's still an open question. And as I wrote, and I believe it was Wright versus Nix, trial counsel can't be ineffective for failing to anticipate a change in the law. And that's essentially what we're trying to conduct trial counsel of doing here, is failing to anticipate the district court's ruling in this case. So the position would be the same. As I said, there's no Eighth Circuit or United States precedent that existed prior to 2010, when Deck's conviction became final, that granted a right to speedy sentencing under the Fifth or Fourteenth Amendments. And certainly not in cases where a defendant was able to present evidence. In this case, Deck was able to present his evidence. In fact, his trial counsel testified he was able to present everything that he would have liked to. And there was no ruling by a trial court excluding some evidence. That's a lot of what this precedent or case law is about. Is when evidence is completely barred from presentation. As for the Eighth Amendment, that's the cruel and unusual punishment ruling by the district court. I'm not aware of any precedent talking about delay in sentencing being related to the Eighth Amendment. And the three cases cited by the district court, as I said, do not regard delay. Those are all just generally about a defendant's right to present evidence. And of course, the state does not dispute the defendant can present evidence, and he did so in this case. One question I have about this is, so Justice Breyer has written a series of dissents over the past 10 or 15 years highlighting that lengthy delays in executions can be a cruel and unusual punishment type claim. Now, nobody's joined him, but he has flagged the issue. And I don't know that he flagged it pre-2008. I haven't looked at it. But is there any response that you have to that? Yes, Your Honor. And so in my brief, I believe I cited Lackey v. Texas. And I think there was another one, maybe two, where the Supreme Court has declined to take certiorari on those kind of claims over and over again about the delay in what I would call execution of sentence, and in death penalty cases, execution period. And I think it's instructive that they have not done that because they're aware of kind of the same issues that are at issue here, which is that particularly in death penalty cases, we expect lengthy, drawn-out litigation over and over and over again. And that's not to say that a defendant's not entitled to those protections. He certainly is. But I think that what that indicates, and what Justice Thomas has said before in some of his dissents and concurrences, is that you can invoke those rights. You're welcome to do that. However, you cannot then complain that it's taking too long to execute you. And that's what's kind of happened here. Well, that's not really what happened here, is it? Because here there were errors that the defendant appealed and was able to get corrected. This isn't a classic, I mean, there's a debate about delay for the sake of delay, and meritless claims causing delay. But that's not what happened here, as I understand it. Well, here's the difference, Your Honor. What happened here is, I agree with you, there were errors that needed to be corrected, and Deck availed himself of that ability to do so and was able to do so. And he got all of the process that he was due to be able to do so. But the problem is, not that the state is trying to penalize Deck for it or somehow blame him. The problem is that he's trying to blame the state. He's invoking these processes and then trying to blame the state for it taking too long. But those were time delays that were caused by Deck. And even further than that— How were they caused by Deck? I mean, he says the state caused the errors. However, at every stage of those litigation proceedings, Deck nearly doubled the amount of time that it took for those proceedings otherwise under the normal flow of justice. So in addition to just the amount of time it would have taken for him to litigate, had he been able to stick to the time constraints, he's actually taken— And when you say he doubled it, was it due to motions for some extensions of time? Was that the sort of delay you're talking about? Yes, Your Honor. Extensions of time, trial continuances. In addition to the direct appeals, post-conviction appeals, he failed a writ of mandamus. He requested the DA's office to be disqualified. He disqualified his own attorneys. Not that he's, again, not entitled to do that. The problem is that— Well, it worked and it wasn't— Was there an actual conflict involved involving someone in the office? Or at least related to the office? Whether I agree that there was a conflict, yes, there was found to be a conflict. And that counsel was changed from the PA's office. So again, we're not trying to penalize Deck though for invoking those. He is trying to get out of his sentence now because of the delay caused by that, righteously or wrongly. I think that Deck delayed it more than was necessary. But now he's trying to get out of his death sentence because of that. And that's where the state takes issue. As far as ineffective assistance of counsel, we haven't talked about that in the context of these new rules of criminal procedure. As I've mentioned to Your Honor Strauss, that Wright v. Nix, trial counsel cannot be ineffective for failing to anticipate a change. So you have to think about the legal landscape that existed back in 2010 or in 2008 when the last resentencing was. And it would not have been clear to trial counsel that if he raised this as an issue, he would have been successful with the trial court. And further, even if the trial court agreed with them, what prejudice is there to Deck? What more could have been done in 2008 to ensure the fairness of his procedures? There's really nothing. And in fact, the state would argue that the evidence was better at the third resentencing than at the first sentencing. He had two more witnesses than he did the first time around. He had two more expert witnesses than he did the first time around. He had 16 more pieces of evidence the third time around than the first time around. And he was able to hire those expert witnesses to filter that information to be palatable and compelling to a jury. Finally, if this court finds that Deck has overcome both of those procedural bars that I've mentioned, the procedural bar and the Teague bar, Deck still cannot succeed on the merits. And we've talked a little bit about this. Prejudice, I think, is the prong that is the most compelling in this case. What prejudice has Deck suffered through this process? There is no—this is not a case where Deck was somehow hobbled by the delay that he had evidence that was disappearing or unavailable to him. As I've stated, he had even more evidence at the resentencing than he did the first time around. And trial counsel testified he absolutely believed that everything that trial counsel wanted to bring out came out at trial in one form or another. And Deck, throughout his pleadings, continuously dodges on what witnesses or what evidence he wishes that he could have presented that was missing due solely to the passage of time. Not one of the witnesses discussed by Deck or the district courts became unavailable due to the passage of time. They'd either preserved their evidence through deposition or trial testimony. Counsel, I have a question. You mentioned that a lot of this came through expert witnesses. But what about the argument—and I don't know that this is their main argument— but the fact that live testimony may be different. And so having firsthand witness testimony to some of these things, rather than having a psychologist or an expert come in and talk about these things, may have been more powerful for the jury. And there were some witnesses that seemed to be unavailable. It may have been. Trial counsel testified, I think, at one point that he would have liked to have that. But that's not due to the delay in this case. That's because, unfortunately, Herman Deck's family was uncooperative and did not want to come testify live. So in a perfect world, perhaps, that was not the case here. The evidence came out through the experts. Additionally, I'm not aware of any precedent that says you have to have live witnesses. I mean, to create such a rule wouldn't itself be T-barred, because the state wouldn't have had any notice that the defendant is entitled to present every piece of evidence in the manner that he wishes to. Well, that's not a new rule. That's just—I mean, you're asking us to decide this on prejudice. And part of the determination of prejudice is, would there have been testimony that otherwise would have been available? I mean, that's a basic question we need to ask. And none of the testimony falls into that category, because it was all either preserved and, in fact, was played through video deposition or read deposition at the resentencing. And there's no other witness that would have not been cumulative to the other witnesses, which this Court has said that a defendant's not entitled to every single thing if it's cumulative or irrelevant. And so it was either preserved, cumulative, or just plain unhelpful to Deck. I will cede the remainder of my time to rebuttal. Thank you. All right. Thank you, Ms. Doolin. Ms. Carlisle? May it please the Court, I'm here on behalf of Carmen Deck this morning. Let me start with ineffective assistance of trial counsel. I think the District Court correctly found, as a matter of fact and law, that Carmen Deck was denied effective assistance of trial counsel when his trial counsel failed to say to the Court, look, it's been 10 years, and I can no longer give Mr. Deck the mitigation presentation that the Constitution requires he have before he's sentenced to death. What relevance is there, though, that Betterman came later, which flagged the claim? It is true that Betterman came later, but I don't see this as primarily a claim of delay in sentencing. What it's a claim of is inability to have a fair sentencing, and the reason for that happens to be delay. Now, there are plenty of cases, starting with Woodson in 1976, about the fact that before someone is sentenced to death, they're entitled to a full presentation that tells the jury not only what they did, but who they are and where they came from. But your subject, even in a sentencing hearing right after trial, right after the guilt phase of the trial, you're still subject to all the vagaries. If a witness gets pregnant and can't travel, you know, if someone's unavailable because they can't be there, they're out of the country, you're subject to all of those things, and it seems to me that that can't be the test. The test has to be the unreasonable delay, which is a Betterman-type claim. Well, I guess what I'm saying is that there are many reasons why you might not be able to present evidence. And in this case, the reason was delay caused by the state, which is the same kind of thing as delay caused by, as failure to, inability to present because of ineffective assistance of counsel, and the same thing as inability to present when the state, when the state court just says, no, you can't present that evidence, and later it's found that it was proper mitigation. So, again, I think that the core is the right to a fair mitigation case, and what happened here was that the state prevented that from happening by a series of mistakes and delays, which weren't DEC's fault. I mean, would there be any evidence that was going to be presented in a new sentencing that wasn't already presented previously? Well, I mean, I guess no, because, and that's the problem, and maybe I don't understand the question. There was certainly some evidence that was presented at the new sentencing that hadn't been presented previously, and that was the expert testimony of one of the witnesses. She testified in the second trial, the other one also testified in the second trial. Well, what about factual? Okay, well, I mean... Any factual evidence going to be presented at the subsequent hearing? Well, when you say, I guess it's when you say going to be presented that I get... Or would have been presented had there been... Well, I think if the, after the first trial, the first trial there were four live fact witnesses, and the Missouri Supreme Court found that that evidence was sufficiently substantial that if the jury had been properly instructed, there was a reasonable probability of a different outcome. So that's kind of the core evidence. If even that had been presented at the third trial, it would have helped. But the difference, and while some of the witnesses were, you know, testified again by video, there were a couple of problems with that. The first was that they weren't there. And, I mean, Judge Strass, you had asked about that, and I don't know that there's a lot of case law about it, but when you're looking at prejudice, it seems to me that when you're a jury and you're sitting in the courtroom and nobody who's ever known Carmen Deck is willing to come to court for him, that speaks to you. And I don't, you know, I think this court is entitled to consider that fact when deciding the prejudice issue. And that was what happened here. Furthermore, if you compare the testimony of those witnesses at the first trial from their recorded testimony at the second trial, there are some fairly significant differences. Major Puckett, Mr. Deck's last post-conviction lawyer, testified at the first trial. He testified that he had driven 800 miles from Florida to testify for Mr. Deck. Second time, by the third trial, he's only living in Neosho, Missouri, but he doesn't get to court. And when he talks about, you know, just for an example, when he talks about what happened when Carmen left his house, the first time he says to the jury, he said, if you take me out of here, you're killing me. And when he's deposed for the third trial, he says, Carmen was very upset about having to leave. I mean, I think if you compare the two mitigation presentations, which are, you know, 10 years and iterations apart, it clearly makes a difference. So that the evidence that the Missouri Supreme Court— Who deposed him for the third trial? Who deposed him? Yeah. Trial counsel. Trial counsel for Deck? Trial counsel for Deck, yes. Yeah. He was Deck's witness, and his testimony was presented at the third trial in lieu of his appearance, so the jury was looking at it on a screen. Well, there's nothing about delay that prevented that lawyer from asking the witness, didn't you say in the first trial that Deck said such and such, right? I suppose not. Although, again, I mean, I think even if he'd done that, then what the jury is hearing is, well, that's not what I'm saying today, but what I said before. Well, how do you know that? He might have said, oh, yeah, that's what I mean when I say he was upset. That's how I know he was upset, because he told me that. Yeah, I guess that's true. Yeah, I mean, he might have done that. Maybe he didn't do it, though, because Major Puckett didn't remember that anymore. I mean, I don't know. Well, the point is that if you have prior testimony, there are ways to get it into the record. That's true. And I wonder if the district court adequately considered that here. What do you think about that? Well, I think the district court, frankly, I don't think the record is particularly well developed. The district court was requested, we requested a hearing from the district court, didn't get one. So this is a case that is newly presented to this court because it hadn't been presented before. And I think if this court is thinking, well, maybe the district court really didn't have enough evidence to come to the conclusion that the delay made a difference, then I think the correct response for this court is to remand for a hearing so we can develop that evidence. And I think we included in our brief a good bit of information about some of the reasons why the record wasn't well developed. But in any event, there was no hearing. And because of that, you're right, the district court was limited and didn't have to be what was on the record because we're not in 2254 D or E land where there are limitations on hearings. This is a ground for relief that wasn't presented in state court. So, but I agree. I think the district court certainly could have had further inquiry had she wanted to. But I think what she focused on was the fact that trial counsel testified at post-conviction. We wanted somebody to come, but we couldn't find anybody. I'm going to grab my water. Counsel, what's your response to the state's Teague Bar argument? Well, first of all, I think it wasn't raised in the district court. So I think while this court may have discretion to consider it, it certainly should have been raised there. Secondly, you go ahead. I think there is discretion. I don't think the Teague Bar was raised in Teague. Well, but that was raised by an amicus. Well, that may well be, but I guess the only thing I'd say about that is, of course, you know, once an objection is available, you're supposed to raise it. So, all right. Okay, fair enough. But, but, but again, I think the, I think, as I've said, I don't think that that, I don't think we're asking for a new rule. We're just asking for an application of the rule that you're entitled to mitigation to a proper mitigation presentation. That's not a new rule. So it's not Teague Bar. Well, did the district court make a new rule by saying that the delay is sufficient justification for resentencing? Or for, for the, for the remedy which the district court imposed, which essentially eliminated the state's sentence? I don't think the state, the district court made a new rule. I think what the district court said was inability to present evidence, is to present a proper mitigation case is a constitutional violation. And in this case, it occurred because of state action and the state action was delay. Now, there may not be a case that says state action of delay specifically is, is a proper, is an obstruction to the presentation of evidence, which, which makes it a sentence unconstitutional. But it's quite clear that the right to mitigation is quite clear. So that's why I don't think there's a new rule. Counsel, I want to ask you, I'm going to ask you a slightly different new rule question, which is the district court did something very strange in my opinion, which is relied on Martinez to get on into the underlying ineffective assistance of trial counsel and then used, I believe it was Edwards to get at the underlying substantive claim. And I couldn't find, I don't think I found a single, there might be one case circuit court case or something along those lines, but that seemed to be a, to me to be a very strange way of going about. And I'm wondering if you can defend what the district court did. I can try. I mean, frankly, I mean, it's, it, it is, I agree that it's a little bit tricky, but basically what the district court says is trial counsel should have made this objection. Post-conviction counsel was ineffective for not pointing that out. And I think as the district court that the objection would have had merit. So I think it's a little bit like Dansby versus Hobbs. If you find that, that, that Mr. Deck was denied effective assistance of counsel because trial counsel failed to make this objection, which would have been meritorious, you know, I think you get, you, you, you get to the same place. So I suppose, I mean, I'm not sure what else you can do once you found as the district court that there's a constitutional violation here and that it wasn't raised by, by trial counsel. I suppose you could remand to the state and say, okay, state, now we want you to find that there was a constitutional violation that we've already told you there was. Well, I'm just wondering, that strikes me as kind of laborious. I guess I'm wondering if the underlying substantive claim, the, the constitutional claim aside from ineffective assistance is really before us, or whether it's procedurally defaulted and really the only thing before us is the ineffective assistance of trial counsel. Now, I agree that that sort of merges into the merits about whether it would be substantial, but I'm just wondering about that. I wondered about it too. I actually found one case from the Ninth Circuit, which I can send you a 28-day letter about. But it's called Ramirez. But I guess what I'm, what I'm suggesting is I'm not sure, I'm not sure it matters. Fair. But you're right. I think if, if there, there would, there might be cases where there was a different kind of ineffectiveness claim where all the, all the reviewing court would do would be to say, okay, we find that there was ineffective assistance of trial counsel. Now we're going to remand for, you know, for whatever else is going to happen. But yeah, I think, I do think that's kind of an unresolved issue at this point. We didn't, we didn't talk a lot about, or Ms. Dolan didn't talk a lot about the ineffective assistance of, of post-conviction counsel claim. And I want to address that a little bit. Basically what post-conviction counsel did was kind of what post-conviction counsel frequently do in death penalty cases, which was to say there were these six witnesses that trial counsel, I pulled six out of my head. I don't know if it was six or not. There were these witnesses that trial counsel should have investigated and called. And what the, what the, the post-conviction court said was, well, we find that even if they were called, there wasn't a reasonable probability of a different outcome if they'd been called. Post-conviction counsel didn't address what, what trial counsel really testified about, which was, you know, we did the best we could, and we couldn't find a, you know, a living soul to come testify for Carmen Deck. And the state sort of, you know, sort of tries to pull those witnesses into this claim. Actually, the district court addressed this claim separately, that we had claims 19 and 20 had to do with this case. And they went on to say, essentially, it wasn't an ineffective assistance problem. The problem was that trial counsel for their best efforts weren't able to do this. It wasn't that they were, it wasn't that they should have and didn't. I mean, I think if this court were to find that trial counsel could have done a better job, that kind of cast doubt on the ruling on the witnesses that were presented in the petition, and as to which the record wasn't well developed for reasons of resources and for other reasons. So the case is in an unusual procedural posture, because as the court knows, we sought certificate of appealability on all the other issues and were denied. So if these two claims are not affirmed, then I think to some degree, at least claims 19 and 20 kind of are more, deserve reconsideration in terms of the certificate of appealability issue. The other thing that the state said that I wanted to address was that was the contention that Mr. Deck had doubled the time that should have been taken, and I have no idea where that comes from. I mean, what I think virtually all of the delay here was attributable to the state. First of all, the state could have, the state counsel could have submitted a proper instruction that was raised for plain error on direct appeal, but the Missouri Supreme Court declined to find plain error. Then they came back, and after trial counsel came in and said, you know, I really should have submitted a proper instruction, I just left that paragraph out. They said, well, okay, we're going to find ineffective assistance of counsel and grant him a new sentencing phase. None of that time is Mr. Deck's problem. I think that's the first three or four years. Then he has his second trial, at which point the judge says, well, I'm going to let him be in shackles since he's been convicted. Deck's counsel objects. Trial counsel overrules the objection. The Missouri Supreme Court could have fixed that problem, too. They didn't. It had to go to the U.S. Supreme Court, which finally said, no, you really can't have his penalty phase in is all imputed to the state. Then it comes back to circuit court, where it takes about another three years. Why is court error attributable to the state? Well, I guess it's not attributable to the state, but it's certainly not attributable to Deck. I mean, what could he have done about it? I mean, you know, maybe I suppose technically it's not, it wasn't, the judge wasn't the state, although I suppose the prosecutor could have said at that point, you know, you know, you know, you know, she's right, she's right, judge. That objection ought to be, ought to be sustained. Why don't you take the shackles off? So to that extent, I suppose it's attributable to the state. But you're right. It's just that the main issue is, was it attributable to Deck? And it certainly wasn't attributable to Deck. There was nothing he could have done about it that he didn't do. And then we get back to, to the, to circuit court, at which point there are two conflicts of interest, one in the, in the prosecutor's office and one in the, in the public defender's office. Again, neither of which are Deck's fault personally. And so they result in some time. And yeah, I mean, I won't, I won't say that nobody ever asked for a continuance, but I think that as the district court recites, every time somebody did, the judge gave them an extra two or three months. And as the court said, well, maybe that was because of, of calendaring problems. But again, that's not something Deck has any control over. So I think it's, it's, it's clear that, that the length of time here that passed is not something about which this court can say, well, we're not going to give Deck relief because of that, because we find that it was his fault. And, and so I think that, that, that's important to was, you know, Deck didn't have any control over the fact that it took 10 years between his first trial and his second trial. And again, I guess I just end by, by emphasizing that we talked a little bit about, about expert witnesses. I mean, the only people Deck could get to court were people his counsel hired to do, to be there. And that was brought out, you know, and I think that was what the jury saw. And although they were relatively eloquent, I think, I think it's, I think again, you know, common sense tells you that from a jury's point of view, it's different hearing a story from somebody who's narrating, you know, this is what I found and these are the reports I read and these are the people I talked to, and hearing it from the horse's mouth. And I think it's that contrast. I'm not saying there's an absolute right to live testimony, but what happened here was because of those 10 years, those people who gave the testimony that the court, that the trial, the Missouri Supreme Court found was sufficiently substantial as to create a reasonable probability of a different outcome, just weren't there anymore. And for that reason, I think Mr. Deck was denied his right to, under the Eighth Amendment, to be free from cruel and unusual punishment and to due process of law and this court should affirm. Thank you, Mr. Carlo. Ms. Dolan, your rebuttal. Thank you, Your Honor. May it please the court. I'd like to begin with the procedural issues and then move on to the merits if I have time. As far as the Teague Bar goes, I've been confused about counsel's statements that I did not raise that in the district court ever since I read it. In my very first response to Deck's habeas petition, I wrote, a new rule applying speedy trial rights to penalty phase trials will be barred by Teague. That was the appellate's appendix at 251. So I'm very confused as to why the claim is that I didn't raise it, but I did and I asked this court to impose it. As far as it being a new rule, it's pretty easy to just say the district court's ruling was just that trials have to be fair, because Deck can't actually articulate any evidence that was missing. And so, because of the district court's ruling on the 8th amendment and the 5th and 14th amendments is amorphous and confusing, we fall back to trials must be fair. The state doesn't dispute that. However, because of the wishy-washy language about the actual evidence missing, it has to be that the district court found some delay-related issue here because she was unable to point to any evidence missing. So there has to be something related to the delay, not just that trials have to be fair. As far as the procedural bar, I'm glad that Judge Strauss brought up how confusing the procedural bar here was with Martinez and Edwards. I was also at a loss to follow the kind of bouncing ball to figure out how procedural bar was excused in this case, and it was not. I guess we can just fall back to whether the case was substantial. The underlying claim of the trial counsel was substantial, and then we move on to the merits. I compared the first and third trial, the evidence, and as I said, there were two expert witnesses. There were additionally three of the same witnesses that testified in the second trial and a new witness, sorry, at the third sentencing, as well as a new witness. This conversation about major pockets that you just heard, that was the first time I've ever heard that. Throughout these proceedings, I've been trying to pin down specific reasons why the evidence was missing. This is the first time that I've heard that his testimony was problematically different, but Judge Gallatin brought up a good point, which is that it was preserved. So if we wanted to have the trial right here and read the entire transcript from the first trial, we could do that. The evidence would be available, and there's no right to live testimony. I have not seen any precedent for that. In fact, trial counsel testified that it actually helped his trial strategy to be able to present it the way that he did. The rest of my time, thank you. Thank you, Ms. Dolan. Thank you also, Ms. Carlisle. The court notes that you're serving today under the Criminal Justice Act by appointment, and we thank you for your willingness to serve in that capacity. The court thanks both counsel for the arguments you provided to the court, the briefing which has been submitted, and we'll take the case under advisement. You may be excused.